NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1867
_____

OMAR SAUNDERS,
                                    Appellant
v.

ADMINISTRATOR NEW JERSEY STATE PRISON;
ATTORNEY GENERAL NEW JERSEY


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-15-cv-02683)
District Judge: Honorable Jerome B. Simandle
_____

Submitted under Third Circuit LAR 34.1(a)
March 3, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*.

(Filed: March 4, 2020)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Omar Saunders appeals a District Court order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He claims his trial counsel was ineffective for failing to interview and call two witnesses. Because the state courts that first rejected Saunders's claim did not apply federal law unreasonably, we will affirm.

I

The New Jersey Superior Court, Appellate Division, determined the following facts, *see State v. Saunders*, 2008 WL 538970, at *1–*4 (N.J. Super. Ct. App. Div. 2008) (per curiam).[1]

On May 31, 2002, four men—Omar Saunders, Donnell Jakes, Jose Alvarez, and Angelo Lopez—rode in Alvarez's white car from Camden to a club in Philadelphia. At the club, Jakes suggested Saunders could not hold his liquor, and the two argued. After leaving, they argued about who should drive. Saunders drove and dropped Lopez off. Saunders then stopped near the intersection of Pierce and North 26th Streets. He exited the car and walked to a nearby corner, while Alvarez and Jakes walked to a grassy area to urinate. Alvarez saw Saunders holding a bottle of Corona beer. A few minutes later, Saunders ran toward Alvarez and gave him the car keys.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires us to presume these facts are correct because Saunders has not attempted to rebut them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Saunders continued running toward Jakes, hugged him, and then began walking back toward Alvarez. Suddenly, Saunders turned around, removed a gun from his pocket, and shot Jakes twice in the head at point-blank range. Jakes fell to his knees, and Saunders fired one more shot. The shooting occurred somewhere between 3:00 and 3:30 a.m. Saunders ran home, while Alvarez got into his car and circled the area for twenty to thirty minutes to see if Jakes was getting help. Alvarez later said he avoided the police because he was on parole. An investigator found a shell casing near Jakes's body and a Corona beer bottle across the street. No murder weapon was found.

Later that day, Saunders threatened Alvarez not to talk to anyone about the homicide. But Alvarez soon reported the homicide to the prosecutor's office and agreed to record a phone conversation with Saunders. In that conversation, Alvarez accused Saunders of "pop[ping] that boy," but Saunders denied it. *Saunders*, 2008 WL 538970, at *2. Later, Alvarez said, "You wild out on the kid you know what I mean?" *Id.* Saunders replied, "True [indeed] now listen." *Id.* Finally, Alvarez asked Saunders whether he disposed of the gun, to which Saunders replied, "Hell yeah!" *Id.* Throughout the conversation, Saunders suggested that he and Alvarez meet in person and that they coordinate their stories.

When investigators talked to Saunders several months later, he blurted out, "I don't own a gun now and I've never owned a gun." *Id.* at *4. He continued, "Donnell and

3

me . . . had several arguments and we made peace." *Id.* Saunders claimed he left Camden because Jakes's family had "kicked [his] door in." *Id.*

## II

At Saunders's trial for first-degree murder and related offenses, Alvarez testified consistent with the facts just described. Lopez testified that when Saunders and Jakes were arguing, Saunders said to Jakes, "I'm letting you live right now. I'll kill you." *Id.* at *3. Lopez also said Saunders refused to make peace with Jakes. The State's other witnesses included three people who lived near the scene of the shooting. David Monserrate testified that at about 3:00 a.m., he heard four gunshots, saw Jakes on the ground, and saw a man matching Saunders's description running away. Paul Rodriguez heard three gunshots at about 3:30 a.m. and saw a person drive away in a white car. And Aida Rodriguez saw the car pass the crime scene three times with its headlights off.

In his defense, Saunders sought to establish an alibi. His father Alphonso Harris testified that, on the morning of the homicide, Saunders came home around 3:00 a.m. and ate a snack. Because Saunders was intoxicated, Harris helped Saunders to bed. Harris also testified that Saunders maintained his innocence in private. But Harris denied that anyone from Jakes's family had kicked his door in or otherwise threatened him. Saunders also suggested that Alvarez killed Jakes. For example, Saunders's counsel asked Alvarez whether he had fought with Jakes before the homicide, but Alvarez said no.

The jury found Saunders guilty, and the court sentenced him to thirty-five years' imprisonment, with an 85 percent parole disqualifier. The Appellate Division affirmed, *see id.* at \*17, and the New Jersey Supreme Court denied certification, *see State v. Saunders*, 957 A.2d 1170 (N.J. 2008) (table).

Saunders sought post-conviction relief (PCR) in state court. He claimed his trial counsel was ineffective for failing to interview and call his relatives Malcolm Rease and Stephen Chalk, who would have testified that Alvarez tried to fight Jakes shortly before the murder.

The PCR court held an evidentiary hearing. Saunders testified that he asked his counsel to speak with Rease and Chalk about the fight between Alvarez and Jakes, but his counsel did not do so because Saunders could not pay his full retainer.

Saunders's counsel testified that he generally hires an investigator to speak with witnesses to avoid becoming a witness in his own cases. Still, he spoke with Arthur Rease (Malcolm's brother), Harris, and Harris's girlfriend, thinking their testimony would help establish Saunders's alibi. He could not recall whether Saunders asked that he speak with Malcolm Rease or Chalk. But he admitted that, if Saunders did ask, he did not interview them "because primarily Mr. Saunders didn't have the ability to pay for an investigator." App. 94. He also doubted the Public Defender's Office would have helped

Saunders to pay. In any event, he thought the fight between Alvarez and Jakes was irrelevant to Saunders's alibi defense.

The PCR court denied Saunders's petition. Applying *Strickland v. Washington*, 466 U.S. 668 (1984), it held Saunders's counsel performed adequately because he "made strategic judgments . . . given [his] limited funds" and decided testimony about the fight was not worth presenting. Supp. App. 47. The court also held that Saunders could not show prejudice. It credited counsel's testimony that "much of the information that Rease and Chalk could provide was merely 'street chatter.'" Supp. App. 48. It also noted that neither witness was available for cross-examination at the evidentiary hearing or claimed to know who murdered Jakes. Finally, it characterized the evidence of Saunders's guilt as "overwhelming." App. 51 n.3.

The Appellate Division affirmed the denial of Saunders's petition "substantially for the reasons set forth by [the PCR court]." *Saunders*, 2014 WL 1686841 at *2 (N.J. Super. Ct. App. Div. 2014). The New Jersey Supreme Court denied certification. *State v. Saunders*, 104 A.3d 1077 (N.J. 2015) (table).

Saunders petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of New Jersey. *Saunders v. D'Illio*, 2018 WL 1251629 (D.N.J. 2018). The District Court denied his petition, finding it "clear that the PCR court reasonably applied federal law." *See id.* at *14.

We granted Saunders a certificate of appealability to review his ineffectiveness claim as it relates to Malcolm Rease and Stephen Chalk.

III[2]

Under AEDPA's deferential standard of review, we cannot grant Saunders's petition unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Put differently, a state prisoner must show that the state court's ruling was "so lacking in justification that there was an error well understood." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Our review of the record leads us to conclude that the PCR court did not apply *Strickland* unreasonably when it held that Saunders could not show prejudice. A petitioner must show a reasonable probability of a different result but for counsel's unprofessional errors. *See Strickland*, 466 U.S. at 694. The court concluded that even if the jury had heard from Rease and Chalk, the result of Saunders's trial probably would not have changed. Its conclusion was not "lacking in justification." *Harrington*, 562 U.S. at 103. It explained that neither Rease nor Chalk could contradict Alvarez's eyewitness testimony. It also characterized the evidence of Saunders's guilt as "overwhelming." In

---

[2] The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 2254(a). We have jurisdiction under 28 U.S.C. § 1291 and 2253(a).

particular, the recorded phone call with Alvarez, Saunders's statements to police, Lopez's testimony, the three eyewitness accounts, and Saunders's flight from Camden all inculpated Saunders. So the state court's finding of no *Strickland* prejudice was not unreasonable.

\*      \*      \*

For the reasons stated, we will affirm the District Court's order denying Saunders's petition.